IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 18, 2022

**ROGER SCOTT AUSTERMILLER v.
PENNY SMITH AUSTERMILLER**

**Appeal from the Chancery Court for Williamson County
No. 20CV-49098    Deanna Bell Johnson, Chancellor**

---

**No. M2022-01611-COA-T10B-CV**

---

This is an accelerated interlocutory appeal as of right pursuant to Tennessee Supreme Court Rule 10B § 2.02 from the trial court's denial of a motion for recusal in a pending divorce action. The husband moved for recusal based on comments the presiding judge made after the husband failed a court-ordered drug test. The judge stated from the bench, "If I could put [the husband] in drug court, I would. It's a two-year program. I would certainly love for him to be in that. Unfortunately, he doesn't qualify because it's not for domestic. It's for criminal." In the order denying the husband's motion, the judge stated: "the Court made these suggestions only to help [the husband] get well and beat his addiction so he can be a father to his two children." The court also found that the husband filed his motion "for an improper purpose, i.e., to delay the litigation." We have concluded that the motion was not filed for an improper purpose; however, we find the evidence is insufficient to prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned. Accordingly, the judgment of the trial court denying the motion for recusal is affirmed.

**Tenn. Sup. Ct. R. 10B Accelerated Interlocutory Appeal;
Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which CARMA DENNIS MCGEE and KRISTI M. DAVIS, JJ., joined.

Gregory Dye Smith and Brenton Hall Lankford, Nashville, Tennessee, for the appellant Roger Scott Austermiller.

Helen Sfikas Rogers and Siew-Ling Shea, Nashville, Tennessee, for the appellee, Penny Smith Austermiller.

# OPINION

Section 2 of Tennessee Supreme Court Rule 10B governs appeals from orders denying motions to recuse. Pursuant to § 2.01, a party is entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal. Tenn. Sup. Ct. R. 10B, § 2.01. The appeal is perfected by filing a petition for recusal appeal with the appropriate appellate court. *Id*. § 2.02.

Our standard of review in a Rule 10B appeal is de novo. *Id.* § 2.01. "De novo" means "anew, afresh, a second time." *Simms Elec., Inc. v. Roberson Assocs., Inc.*, No. 01-A-01-9011-CV-00407, 1991 WL 44279, at *2 (Tenn. Ct. App. Apr. 3, 1991) (quoting *Black's Law Dictionary*, 392 (5th ed. 1979)).

If we determine, after reviewing the petition and supporting documents, that no answer is needed, we may act summarily on the appeal. Tenn. Sup. Ct. R. 10B, § 2.05. Otherwise, this court must order an answer, and we may also order further briefing by the parties. *Id.* This court also has the discretion to decide the appeal without oral argument. *Id*. § 2.06.

Following a review of the petition for recusal appeal, we have determined that neither an answer, additional briefing, nor oral argument is necessary, and we elect to act summarily on the appeal in accordance with Rule 10B § 2.05 and .06.

## FACTS AND PROCEDURAL HISTORY

Roger Scott Austermiller ("Husband") filed this petition for recusal appeal on November 17, 2022. Husband seeks to overturn Chancellor Deanna Bell Johnson's denial of his motion for her recusal. This appeal arises from a pending divorce action between Husband and Penny Smith Austermiller ("Wife") in the Chancery Court of Williamson County, Tennessee, over which Chancellor Johnson is presiding.

Any party seeking recusal of a judge must file a written motion promptly after the party "learns or reasonably should have learned" of the alleged basis for recusal. Tenn. Sup. Ct. R. 10B, § 1.01. The motion must be supported by an affidavit. *Id*. Further, the motion must state, *inter alia*, "all factual and legal grounds supporting disqualification of the judge." *Id*.

Husband's allegations of bias are based on what he describes as "troubling statements made by the trial court at the conclusion of the October 10 hearing," much of which we quoted above. Husband's motion for recusal reads in pertinent part:

# FACTUAL BACKGROUND

1. Wife re-initiated this underlying divorce action against Husband on October 28, 2021.

2. On or about February 12, 2022, Wife filed a Temporary Petition for an Order of Protection against Husband, which was subsequently granted. As a result, Husband was ordered to stay away from Wife and the parties' two children, and further prohibited from having contact with Wife's place of employment at Austermiller, Inc.

3. After a hearing on March 3, this Court entered an Order making Wife's Temporary Order of Protection permanent.

4. That same day, Wife filed her first Petition for Criminal Contempt against Husband. The majority of the allegations in Wife's First Contempt Petition accuse Husband of violating the Temporary Order of Protection by indirectly attempting to contact Wife. Wife requested Husband be fined $50.00 and incarcerated for ten (10) days for each offense. Additionally, Wife requested that the Court extend the Order of Protection for ten years and impose a bond in a "high amount" against Husband to ensure he complied with the Order. Wife further requested that she be awarded her attorney's fees and costs in bringing her First Contempt Petition.

5. On May 5, Wife filed another petition for criminal contempt against Husband. Wife's Second Contempt Petition similarly accused Husband of indirect contact, and for improperly accessing marital property in violation of court orders. Wife again requested her attorney's fees and costs, but further asked that the Order of Protection be extended to fifteen years.

6. On July 19, Wife filed a Criminal Complaint against Husband in Williamson County General Sessions Court, accusing Husband of aggravated stalking. This matter is still pending in the General Sessions Court.

7. On October 10, 2022, a hearing was held by this Court to address Husband's pending motions to dismiss Wife's Petitions for Criminal Contempt and other relief pertaining to the underlying divorce. . . . Husband's Motion to Dismiss Wife's Criminal Contempt Petitions was not decided and postponed to a later date.

8. Husband was in attendance at this hearing, and the Court acknowledged his presence in the courtroom. Towards the conclusion of the hearing, the Court and Husband's attorney in the divorce action, Gregory D.

Smith, had the following correspondence:

> Court: "If I could put him in drug court, I would. It's a two-year program. I would certainly love for him to be in that. Unfortunately, he doesn't qualify because it's not for domestic. It's for criminal. Although with his criminal case, you know, he may qualify for that."
>
> Counsel: "Your Honor, he doesn't qualify because he hasn't been convicted. I think."
>
> Court: "I know. Well, it's part of the plea agreement. Who is his criminal defense attorney?"
>
> Counsel: "Mark Puryear."
>
> Court: "So maybe, Mr. Smith, could you reach out to Mr. Puryear and see if whatever he's looking at would be something for which he could do recovery court. We call it recovery court now. Or also if you'll mark this down, TN ROCS. It's TN—the letters T-N and then R-O-C-S. It's an acronym. That's sort of like recovery court lite. It's a program that might be helpful. Really, recovery court would be best. If we could send him to Morgan County for that one year. That's one year inside. You know, sort of in custody would be great. It would help him a lot."

9. Wife's First and Second Petitions for Criminal Contempt against Husband are set to be heard by this Court on January 6, 2023 and January 11, 2023.

(Citations and emphasis omitted).

"Upon the filing of a motion pursuant to section 1.01, the judge shall act promptly by written order and either grant or deny the motion. If the motion is denied, the judge shall state in writing the grounds upon which he or she denies the motion." Tenn. Sup. Ct. R. 10B, § 1.03.

Acting pursuant to § 1.03, Chancellor Johnson entered an order on November 15, 2022, in which she denied the recusal motion. The relevant portions of the order read:

## I. FACTS AND PROCEDURE

This is a divorce case. Husband, like many divorce litigants these days, struggles with addiction. Husband's addiction has a tortured and long

– 4 –

history. During this litigation, both Husband and Wife have testified and shared with the Court that Husband's addiction has been serious and on-going for many years. Husband will get clean and remain sober for a while and then Husband will again relapse. During this divorce litigation, Husband's addiction has been a primary issue and the Court has dealt with it numerous times. The extent and seriousness of Husband's drug addiction was so concerning to the Court, it appointed a Guardian *Ad Litem* and then a Conservator for Husband.

During one court proceeding, it was blatantly obvious Husband was intoxicated. The Court placed Husband under oath and asked him if he would pass a drug screen; Husband testified he would. The Court sent Husband for a drug screen and he failed. The Court found Husband in contempt for lying to the Court and sentenced him to serve ten days in the county jail for his contempt. The deputies took Husband to the jail. As is the procedure, deputies searched Husband before he could be "booked" and fentanyl was found on Husband. Husband was then charged with the criminal offense of attempting to bring contraband into a penal institution.

The undersigned has the privilege of serving as the Recovery Court judge for the Twenty-First Judicial District. During this service and training for such service, the undersigned has seen the wonderful things which can happen in Recovery Court and the lives which can be changed through the great work of Recovery Court. The undersigned also handles the TN-ROCS docket. Like with Recovery Court, the undersigned has witnessed lives changed with TN-ROCS. Based on the tragic drug and alcohol problems in this country, many domestic cases involve these issues. This problem is heartbreaking, especially when children are involved. The undersigned has inquired as to a TN-ROCS or Recovery Court program covering family court. Indeed, on a few occasions, the undersigned has had conversations with Judge Duane Slone, who created TN-ROCS, about a TN-ROCS program for family court and was advised Judge Slone puts family law litigants into the TN-ROCS program. The undersigned has occasionally placed family law litigants into a modified version of TN-ROCS.

With this back-drop in mind, we come to the hearing which occurred on October 10, 2022. This hearing was scheduled to address numerous motions. The hearing began at 1:43. Over three hours later, the Court advised the attorneys that the Court had a meeting with the other judges of the Twenty-First Judicial District which had been scheduled for a while and offered for the attorneys to either return to court at 7:00 p.m. or reschedule the remainder of the hearing. Husband's attorney, Greg Smith, suggested the attorneys confer over the next few weeks to resolve some of the outstanding

issues; Wife's counsel, Helen Rogers, agreed. Thus, it was agreed the attorneys would confer and let the Court know if a further hearing was necessary.

Ms. Rogers then asked the Court for clarification on the Court's prior order permitting Husband to spend $5,000 per week. The Court clarified that the order meant Husband could only spend $5,000 per week. This ruling was opposite what Husband was requesting. After clarifying that order, the Court then instructed Husband to appear at the Court's criminal motions docket every other week, beginning October 17, 2022, to show proof of clean 16-panel drug screens and to report to the Court his status. This was to be a review of Husband's status, similar to that used in TN-ROCS. The Court further instructed these 16-panel drug screens be through Educare, a local agency and instructed Mr. Smith to contact Educare. The Court then stated, "If I could put him in drug court, I would. It's a two-year program. I would certainly love for him to be in that. Unfortunately, he doesn't qualify because it's not for domestic. It's for criminal. Although with his criminal case, you know, he may qualify for that." The Court explained to Mr. Smith that Recovery Court comes as part of a plea agreement in a criminal case. The Court then suggested Mr. Smith contact Husband's criminal defense attorney to "see if whatever he's looking at would be something for which he could do recovery court." The Court also suggested Husband's criminal defense attorney consider TN-ROCS, but noted Recovery Court would be best because it might allow Husband to obtain treatment at Morgan County, which is an intensive, but highly successful, one-year in-patient program. The Court made these suggestions based on Husband's prior history of serious and intense drug addiction. Obviously, the Court made these suggestions only to help Husband get well and beat his addiction so he can be a father to his two children. The Court went on to say, "But for now until they resolve that criminal matter, I want you here on October 17th and October 31st. . . . I'm going to . . . kind of monitor him as this case goes along."

The Court's reference to Husband's criminal case was clearly in reference to his criminal charge for bringing contraband into a penal facility, not the criminal contempt charges before the Court. As the Court clearly stated, Recovery Court is a two-year program, with one year being incarceration. Criminal contempt would not bring such a sentence. Moreover, the Court recommended Mr. Smith contact Husband's criminal defense attorney to discuss the possibility of Recovery Court as part of a plea agreement in the criminal case. The Court did not suggest Mr. Smith, Husband's domestic attorney, discuss Recovery Court with Husband.

Then, following an analysis of the applicable law, Chancellor Johnson set forth her decision:

In the instant case, Husband claims the Court is biased, or there is an appearance of bias, because the Court has prejudged Husband's guilt regarding the criminal contempt petitions pending against him. This claim completely misstates the entire discussion at the October 10, 2022 hearing as well as the Court's intentions. The Court's statements during the hearing about putting Husband in Recovery Court were clearly directed at addressing Husband's drug addiction. The Court's statements had nothing to do with Husband's guilt or innocence on the criminal contempt petitions. Moreover, the Court made it clear it could not put Husband in Recovery Court because that program is for criminal cases, not domestic cases: "If I could put him in drug court, I would. It's a two-year program. I would certainly love for him to be in that. Unfortunately, he doesn't qualify because it's not for domestic. It's for criminal." The Court went on to suggest Husband's domestic lawyer communicate with Husband's criminal defense lawyer to explore whether Recovery Court would be an option for Husband in negotiating and settling, via plea agreement, his criminal case: "Although with his criminal case, you know, he may qualify for that." At no time did the Court indicate any opinion as to Husband's guilt or innocence on the criminal contempt petitions pending before the Court. Husband's criminal case is still in the Williamson County General Sessions Court and not even before this Court. Finally, and most importantly, the Court's comments were clearly a heart-felt intention to get Husband much needed help for his very serious and long-held addiction. Thus, Husband has failed to show the Court's comments were biased or could remotely be construed to be biased, even to a layperson.

Additionally, Husband has failed to show the Court's comments were from an extrajudicial source. The Court's comments stem from the Court's experiences and observations in this case about Husband's serious drug addiction. These experiences and observations are from the hearings held in this case, the testimony given by both Husband and Wife, Husband's perjury to the Court that he would produce a negative drug screen, and the production of a drug screen positive for narcotics.

The Court further finds Husband has filed this motion for an improper purpose, i.e., to delay the litigation and prevent court order[s] being entered. As discussed by Wife in her opposition papers, she filed two orders codifying two of the Court's oral rulings at the October 10, 2022 [hearing]. Those orders required Husband to do certain things. Rather than comply with the orders, Husband filed this motion so this Court could not enter the orders. Such a filing is for an improper purpose. Moreover, the filing of this motion

– 7 –

delays this divorce proceeding. This case was filed in 2020 and needs to be resolved.

Based on the foregoing, the Court finds Husband has failed to meet his burden of showing the Court should recuse. Therefore, the motion is, respectfully, denied.

**IT IS SO ORDERED.**

This Rule 10B appeal followed.

## STANDARD OF REVIEW

When reviewing an appeal pursuant to Tennessee Supreme Court Rule 10B, we limit our review to whether the trial court erred in denying the motion for recusal. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). "[W]e review the denial of a motion for recusal under a de novo standard of review." *Id*. (citing Tenn. Sup. Ct. R. 10B, § 2.06).

## ANALYSIS

As our Supreme Court has recently explained,

"Litigants in Tennessee have a fundamental right to a 'fair trial before an impartial tribunal.'" Tennessee's Rules of Judicial Conduct require judges to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary" and to "uphold and apply the law, and . . . perform all duties of judicial office fairly and impartially." Our rules define "impartiality" and "impartially" as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge."

Tennessee Supreme Court Rule 10, Code of Judicial Conduct, Canon 2, Rule 2.11, states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Bases for which a judge's impartiality might reasonably be questioned include, as are pertinent to this case, when the judge has "a personal bias or prejudice" against any of the parties, [or] "personal knowledge of facts that are in dispute in the proceeding . . . ."

"[T]he test for recusal is an objective one because the appearance of bias is just as injurious to the integrity of the courts as actual bias." Thus, the test for recusal requires a judge to disqualify himself or herself in any proceeding in which "a person of ordinary prudence in the judge's position,

knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality."

*State v. Griffin*, 610 S.W.3d 752, 757–58 (Tenn. 2020) (citations omitted).

"The party seeking recusal bears the burden of proof." *Boren v. Hill Boren, PC*, 557 S.W.3d 542, 552 (Tenn. Ct. App. 2017) (quoting *Runyon v. Runyon*, No. W2013-02651-COA-T10B, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014)). Specifically, "[a] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012) (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7–8 (Tenn. Ct. App. 2002)).

In his petition for recusal appeal, Husband states that he filed the petition "to preserve his Constitutionally protected right to a fair and impartial trial," and he argues that "[t]he trial court's desire to confine Husband to a facility" warranted recusal. Additionally, Husband contends the trial court erred in concluding that he filed his motion for an improper purpose, which the trial court found was "to delay the litigation and prevent court order being entered." We shall discuss each in turn.

## I. BIAS

Husband admits in his petition that he "has battled an unfortunate drug addiction." But Husband asserts that he "has made substantial steps towards recovery," "has been sober for over three months now," and "is making progress towards returning to his normal life." More specifically, Husband points out that he recently received a clean medical assessment and has successfully passed multiple drug tests:

> Husband recently received treatment for his addiction at California Addiction Treatment Center, LLC d/b/a Desert View Recovery in California. On August 19, Husband underwent a medical assessment conducted by Jennifer Brewer, MD. The assessment revealed that Husband is progressing well, does not need medication, or have any psychiatric diagnosis. Based on the assessment, Dr. Brewer concluded that Husband "does not appear to meet criteria for a conservator, as he is able to weigh the risks and benefits around decisions as they relate to his finances, medical treatment and self-care." Husband filed this assessment on August 26, 2022. Additionally, Husband has abided by court orders, and filed over 30 consecutive drug test results, all showing that he is sober.

(Citations omitted).

Nevertheless, at the October 10 hearing, Chancellor Johnson engaged in the following colloquy with Husband's counsel, Greg Smith:

> THE COURT: . . . If I could put him in drug court, I would. It's a two-year program. I would certainly love for him to be in that. Unfortunately, he doesn't qualify because it's not for domestic. It's for criminal. Although with his criminal case, you know, he may qualify for that.
>
> MR. SMITH: Your Honor, he doesn't qualify because he hasn't been convicted, I think.
>
> THE COURT: I know. Well, it's part of the plea agreement. Who is his criminal defense attorney?
>
> MR. SMITH: Mark Puryear.
>
> THE COURT: So maybe, Mr. Smith, could you reach out to Mr. Puryear and see if whatever he's looking at would be something for which he could do recovery court. We call it recovery court now. Or also if you'll mark this down, TN ROCS. It's TN—the letters T-N and then R-O-C-S. It's an acronym. That's sort of like recovery court lite. It's a program that might be helpful. Really, recovery court would be best, if we could send him to Morgan County for that one year. That's one year inside. You know, sort of in custody would be great. It would help him a lot.

In his petition for recusal appeal, Husband argues the foregoing statements by Chancellor Johnson show a bias against Husband for which recusal is justified[1]:

> The one thing that is clear from the trial court's statements and Order denying Husband's recusal motion is that the trial court believes Husband would benefit from spending time incarcerated. This fact alone warrants recusal, because the trial court will be deciding whether Husband should be put in jail in just a few short months through Wife's contempt actions. The motivations behind the trial court's desire to confine Husband to a facility are irrelevant. Husband is entitled to a fair trial in front of an impartial court, not one that has a desire to incarcerate him.

(Citations omitted).

Considering the foregoing in the context of the entire record before us, we believe a reasonable person would conclude that Chancellor Johnson's comments represent a

---

[1] The terms "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Ct. Crim. App. 1994) (citing 46 Am. Jur. 2d, § 167 (1969)).

desire to help Husband deal with his history of drug abuse instead of a desire to incarcerate or otherwise punish Husband. As Chancellor Johnson explained, incarceration was merely a means by which Husband might qualify for drug treatment; however, Chancellor Johnson did not state that she intends (or has the authority) to incarcerate Husband for the period of time necessary to qualify for in-patient treatment through Recovery Court. In fact, Chancellor Johnson acknowledged from the bench that Husband "doesn't qualify because [Recovery Court is] not for domestic."

Moreover, it is apparent from the colloquy between Chancellor Johnson and Husband's counsel, Mr. Smith, that Husband would not qualify for Recovery Court unless he is, *inter alia*, convicted of a felony offense in a criminal court proceeding and sentenced to two years or more in prison. The chancery court in which Husband's divorce proceedings are pending has no jurisdiction to do either. Further, a reasonable person would conclude that Chancellor Johnson's comments in her colloquy with Mr. Smith were mere recommendations for Mr. Smith to discuss with Husband's criminal defense counsel as an option for drug treatment. And as Chancellor Johnson explained in her order, she "made these suggestions only to help Husband get well and beat his addiction so he can be a father to his two children."

As noted, "[a] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke*, 398 S.W.3d at 671 (quoting *Eldridge*, 137 S.W.3d at 7–8). Having carefully reviewed the evidence Husband relies on, we find it insufficient to prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned. Accordingly, we affirm the decision to deny Husband's motion for recusal.

## II. IMPROPER PURPOSE OR DELAY

In her order, Chancellor Johnson found that Husband filed his motion to delay the litigation and prevent the court from filing two pending orders:

> . . . Husband has filed this motion for an improper purpose. i.e., to delay the litigation and prevent court order being entered. As discussed by Wife in her opposition papers, she filed two orders codifying two of the Court's oral rulings at the October 10, 2022. Those orders required Husband to do certain things. Rather than comply with the orders, Husband filed this motion so this Court could not enter the orders. Such a filing is for an improper purpose. Moreover, the filing of this motion delays this divorce proceeding. This case was filed in 2020 and needs to be resolved.

Husband contends this was an erroneous ruling as a matter of law. More specifically, Husband argues that the trial court mistakenly concluded "that Rule 10B § 1.02 would

prohibit the trial court from signing and entering orders requiring Husband to appear on October 31 and to submit to a Rule 35 examination, despite the trial court orally making those orders at the October 10 hearing." We agree.

As this court explained in *Guo v. Rogers*, No. M2020-01321-COA-T10B-CV, 2020 WL 6781244 (Tenn. Ct. App. Nov. 18, 2020), "The purpose of section 1.02 is to ensure that a trial court makes no *substantive* decisions while the motion to recuse is pending." *Id*. at *4 (citation omitted). In *Guo*, the plaintiff argued that the trial court violated § 1.02 by filing a written order on pending motion after the plaintiff moved for recusal. *Id*. at *4. We disagreed, reasoning that the trial court announced its decision from the bench before the plaintiff filed his motion for recusal:

> . . . [T]he trial court heard [the plaintiff]'s motion to revise on July 10, 2020. In one of the supporting documents included in our appellate record, [the plaintiff] admits that the trial court orally denied the motion to revise on the same day, i.e., July 10, 2020. Furthermore, [the defendant], as the prevailing party, drafted a proposed order denying the motion to revise and mailed it to [the plaintiff] on July 10, 2020. From the record, there is no question that, as of July 10, 2020, [the plaintiff] was cognizant of the trial court's decision to deny his motion to revise. In other words, the trial court made its substantive decision on the motion on July 10, 2020, which was nine days before [the plaintiff] filed his motion to recuse. The trial court's electronic signing and filing of the order on August 6, 2020 was purely administrative, and these acts were not in violation of Tennessee Supreme Court Rule 10B, section 1.02.

*Id*.

As explained in *Guo*, when a Rule 10B recusal motion is pending, the trial court may enter orders that are based upon rulings the court made from the bench before the recusal motion was filed. *See id*.; *see also Adkins v. Adkins*, No. M2021-00384-COA-T10B-CV, 2021 WL 2882491, at *8 (Tenn. Ct. App. July 9, 2021) (concluding that order disbursing funds "was purely administrative and did not violate [§ 1.02]"). Accordingly, after Husband filed his motion for recusal, Chancellor Johnson was not prohibited from entering orders based on rulings she already made.

For the foregoing reasons, we find Husband's filing of the recusal motion was neither frivolous nor intended to delay the unresolved issues; thus, it was not filed for an improper purpose.

### III.   MOTION FOR STAY

Husband also filed a motion to stay the proceedings in the trial court pending our decision. Based on our ruling above, the motion is respectfully denied as being moot.

**IN CONCLUSION**

For the foregoing reasons, the judgment of the trial court denying Husband's motion to recuse is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Roger Scott Austermiller.

_____
FRANK G. CLEMENT JR., P.J., M.S.