IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 5, 2024

## SHELBY COUNTY, TENNESSEE v. DELINQUENT TAXPAYERS 2021

Appeal from the Chancery Court for Shelby County
No. TP-2023 Melanie Taylor Jefferson, Chancellor

_____

### No. W2024-00504-COA-T10B-CV
_____

This is an accelerated interlocutory appeal from the denial of a motion for recusal of the trial judge. After carefully reviewing the record provided by the appellant, we reverse the decision of the trial court denying the motion for recusal and remand for reassignment.

**Tenn. S. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Gregory S. Gallagher and Kevin Eugene Childress, Memphis, Tennessee, for the appellant, Shelby County, Tennessee.

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

This case began in May 2023 with the filing of a complaint by Shelby County, Tennessee, for the collection of delinquent personal property taxes for tax year 2021. There were approximately 3,816 defendants identified on exhibit A to the complaint who allegedly owed delinquent taxes. In July 2023, Shelby County filed an "initial" motion for default judgment, stating that it had mailed a summons and notice to each defendant and was in the process of reviewing and compiling the returns in preparation for filing a supplemental motion for default judgment within the next few weeks. Shelby County asked the court to grant a default judgment as to all defendants who had not filed an answer upon the filing of the supplemental motion. Shelby County also filed a motion for a

scheduling order.

On Friday, August 18, 2023, counsel for Shelby County, Gregory Gallagher, appeared at a hearing before Chancellor Melanie Taylor Jefferson on the motion for a scheduling order. According to Shelby County, Chancellor Jefferson was "extremely upset" that the case had been assigned to Part I of chancery court, was "quite emphatic" that she should have been included in the process and setting of any court dates, and indicated that she felt "disrespected." Chancellor Jefferson demanded that a meeting take place expeditiously on Monday, August 21, with the other two Shelby County chancellors, the court clerk and its tax sale staff, and the Shelby County Trustee. The record contains the following email that was sent by Chancellor Jefferson to these individuals on Friday, August 18:

> First and foremost, I called this meeting when I discovered a personal property lawsuit with over 5000 cases was filed and assigned to my court room without one discussion with me or any of the other Chancellors. We, not any of the other people listed on this email, dictate how or when this type of undertaking should be implemented. This is a blatant disrespect of my title and my authority.
> With that being said, the issue is how you are going to fix the fact that you have assigned these cases to my Court WITHOUT my consent. I set my own calendar NOT any of you. September 29th and no other day is going to be used for this endeavor until it is resolved. Further, there is the discussion of assignments. There are three (3) parts to chancery and this massive caseload should have been evenly and fairly distributed. The last conversation I had was regarding the weighted case load and how tax matters are assigned.
> What happens when they start filing Motions to Stay when garnishments for collection of these funds are issued? Call and come to court unannounced with their questions.
> These are the answers I am looking for on Monday.

According to Shelby County, the annual delinquent tax lawsuits have been assigned in the same manner for at least twenty-five years, with the clerk rotating each year the part of the chancery court to which the annual lawsuits are assigned. However, Chancellor Jefferson had only recently assumed the bench, on or about September 1, 2022.

At the meeting on Monday, August 21, 2023, the court clerk explained that this case could not be divided into three separate cases because it had already been filed as one. According to Shelby County, Chancellor Jefferson again stated that she had been disrespected and indicated that "it did not matter how many defendants were involved, she was not going to do it." She was reportedly "very emphatic" that "no one could make her" handle the suit without assistance from other chancellors. The other two chancellors

ultimately agreed to each hear one-third of the motions, hearings, etc., on the pending lawsuit by interchange. Mr. Gallagher was directed to draft a consent order to that effect to be signed by all three chancellors. The "Tax Sale Coordinator" for chancery court subsequently split the defendants in this lawsuit into three groups so that the three chancellors could each hear an approximately equal number via interchange.

Before the consent order was signed, however, Chancellor Jefferson entered a *sua sponte* order of dismissal of the entire lawsuit on August 29. It simply states:

> THIS MATTER is before the Court upon the Complaint for Collection of Delinquent Taxes and Initial Motion for Default Judgment filed by the plaintiff Shelby County, Tennessee ("Plaintiff"), and the responses thereto of the various defendants. Due to the immense volume of the defendants potentially involved in this case, the Court, acting *sua sponte*, hereby finds that this matter should be dismissed without prejudice to permit the Plaintiff and the Clerk and Master additional time to ensure that hearings related to this matter are properly apportioned across the three (3) Parts of Chancery Court and to ensure the timely and efficient administration of justice in these proceedings. Accordingly, this matter is hereby DISMISSED without prejudice.

Shelby County timely filed a motion to alter or amend or set aside the order. In that motion, Shelby County explained that its staff had expended an overwhelming amount of labor in this case generating and processing the necessary taxpayer lists and required notices. It explained that a summons and notice was sent to each of the three thousand defendants with certified return receipt, and Shelby County had expended numerous hours reviewing and processing the returns. It also pointed out that notices had already been provided to defendants in connection with the pending motion for default judgment. Shelby County claimed that it had spent over $41,000 in printing and mailing costs alone. It noted that these costs and labor expenditures would have to be repeated if the lawsuit was dismissed and refiled, and the County Trustee would have to request additional funds from the County Commission to cover the costs because they were not presently in the County's budget. Additionally, Shelby County noted that any taxes not collected within a statutory collection period become uncollectible, which could result in additional loss of revenue to the County.

Shelby County also explained, in its motion to alter or amend, that the average number of municipal and county parcels involved in its mass real estate tax lawsuits is over 20,000. Still, Shelby County explained that each suit remains in a single court through the confirmation of the tax sale, and the cases rotate between the three parts of chancery court. Shelby County explained that its Trustee and delinquent tax attorneys chose not to combine the personal property lawsuit with the real estate tax lawsuit but filed it separately to avoid combining so many defendants. The County contended that it had proceeded in accordance with all applicable laws and yet the chancellor had simply dismissed the case based on

concerns over docket management. Shelby County noted a local rule requiring refiled cases to be assigned to the same part of chancery court where originally filed, so it questioned what the order of dismissal sought to accomplish in the first place. In conclusion, it asked the chancery court to set a hearing on the motion to alter or amend at its earliest convenience, to grant the motion to alter or amend and reinstate the lawsuit, and to sign the consent order as agreed during the August 21 meeting allowing the other chancellors to hear the matters by interchange.

After the motion to alter or amend was filed, Shelby County's delinquent tax attorney, Mr. Gallagher, attended "a routine court tax docket" in Chancellor Jefferson's court and addressed the court in an effort to obtain a hearing for the Rule 59 motion. According to Shelby County, Chancellor Jefferson "responded that she was not going to set the Rule 59 motion for a hearing." Mr. Gallagher then offered to file "a written motion to request a hearing date" and schedule that motion for a hearing date "on the regular Friday Motion docket." Chancellor Jefferson "replied that if the motion was set in this manner, she would strike it from the calendar." Mr. Gallagher advised the court that he had a duty to his client and to the taxpayers to take the steps necessary to have the motion set for a hearing.

On November 21, 2023, Shelby County filed a written "Motion for Hearing Date" on its motion to alter or amend. Shelby County then filed a "Notice of Hearing Date for Motion for Hearing Date," scheduling the matter to be heard on December 8. On that date, the trial court held a hearing on the motion for a hearing date and set the hearing on the motion to alter or amend for March 14, 2024. During the December 8 hearing, an attorney who appeared on behalf of a defendant indicated that he would speak to Mr. Gallagher in the hallway about the history of the case and why it was dismissed *sua sponte*. Chancellor Jefferson stated that if the attorney felt that Mr. Gallagher's explanation was not complete, then she "would be happy to make sure he was told the truth about the facts . . . because . . . [Shelby County] and Mr. Gallagher had their story and she had hers."

Around this time, Mr. Gallagher sought assistance from the Senior Criminal Court Judge in Shelby County, Carolyn Wade Blackett, as to how he could amicably resolve the issues with Chancellor Jefferson. Mr. Gallagher admittedly expressed concern about the situation involving the *sua sponte* dismissal and the hearing dates. According to Shelby County, Judge Blackett agreed to speak to Chancellor Jefferson to see if she could assist in obtaining an amicable resolution.

Days later, on or about December 13, Chancellor Jefferson "approached" Mr. Gallagher in the common area of the clerk's office and was "extremely angry and upset." She began the conversation by stating that she "did not like being threatened" and then told Mr. Gallagher to "Bring it." He "attempted to calm the situation" and offered to discuss the matter privately in chambers, but Chancellor Jefferson refused. She advised Mr. Gallagher that the Shelby County Trustee, Regina Newman, only had three years left to

- 4 -

serve but that Chancellor Jefferson would be around for "a while." She then told Mr. Gallagher to tell Ms. Newman, his boss, to "Bring it." According to Shelby County, it was very apparent to everyone hearing the conversation that Chancellor Jefferson was extremely angry with Ms. Newman. Chancellor Jefferson also accused Mr. Gallagher of choosing to speak to Judge Blackett "because Judge Blackett is a black woman." She also accused Mr. Gallagher of threatening to file a complaint with the Court of the Judiciary but said that if he did "it would not be the first" and that "she could handle it." According to Shelby County, this "confrontation" was humiliating and held within earshot of numerous employees in the clerk's office.

The very next day, Shelby County was before the chancery court in a real estate tax sale case, and Chancellor Jefferson reversed a former ruling in favor of Shelby County in what Shelby County describes as a clear violation of the applicable statute. According to Shelby County, Chancellor Jefferson "seemed to almost dare the Shelby County Delinquent Tax Attorney to argue against her ruling."

On January 10, 2024, Shelby County filed a status report indicating that all the terms of the proposed consent order had been met, with the parcels divided into groups, the other chancellors committing to handle portions of the case by interchange, and the consent order being drafted and ready for entry. However, no action was taken on the matter in the following month.

On March 4, 2024, ten days before the scheduled hearing on the motion to alter or amend, Shelby County filed a motion for recusal. It asked Chancellor Jefferson to recuse herself from any further participation in this annual lawsuit and all court proceedings generated from it. Shelby County asserted that it was clear that Chancellor Jefferson was biased against Shelby County and its counsel and angry at them. Shelby County described the course of events occurring in this lawsuit, including the first hearing at which Chancellor Jefferson was "visibly upset" and said she felt disrespected; her email stating that there had been a "blatant disrespect of my title and my authority" by assigning the case to her court without her consent; the meeting in which she repeated her position that she was "disrespected" and emphatically stated that she was not going to handle the suit without assistance; the *sua sponte* order of dismissal despite the agreement among the chancellors, resulting in significant losses by Shelby County; her refusal to set the motion to alter or amend for a hearing; stating during open court that Shelby County had its story and she had hers; confronting Mr. Gallagher in the clerk's office and telling him and his boss to "Bring it"; and changing her ruling in a separate case the following day. Shelby County alleged that this course of action left "little doubt" that Chancellor Jefferson was hostile toward and prejudiced against it and its attorneys. At the very least, Shelby County asserted that these actions gave an appearance of bias. Shelby County noted Tennessee Code Annotated section 67-5-2405(c), which states, "Suits for the collection of delinquent taxes are to be prosecuted to a conclusion as soon as practicable, and for this purpose proceedings in respect thereto are to be accorded priority by the court." Shelby County

supported its motion with an affidavit of Shelby County Trustee Regina Newman, who stated that the chancellor's actions had delayed the collection of taxes and created additional unanticipated costs for the County. She believed that Shelby County could not obtain a fair hearing in this case.

On March 14, 2024, Chancellor Jefferson entered an order denying the motion for recusal. At the outset, she explained that the clerk's office assigned this matter "in its entirety" to Part I of chancery court, which she had presided over since September 1, 2022. Chancellor Jefferson explained that she had "made it well known that she alone controls the Court's calendar" and that any litigants must obtain hearing dates directly from her. She stated that during the August 18 hearing on the motion for a scheduling order, she "first comprehended the tremendous burden this lawsuit would potentially impose upon the functionality of the Court and its administration of its other pending matters." She acknowledged requesting a meeting about the situation and emailing the interested parties with her concerns. She also conceded that during the meeting "it was agreed" that the matter would be equally split between the three parts of chancery court with two-thirds of the matter being heard by the other chancellors by interchange and a consent order being drafted to that effect.

"However," she explained that shortly after the August 21 meeting, she learned that Shelby County had already "unilaterally and improperly" set its motion for default judgment for hearing on September 29. Chancellor Jefferson stated that she had not been approached about setting the motion for a hearing, despite her longstanding policy, so she was "astonished to learn that thousands of Defendants had received these Notices commanding them to appear before Part I for hearing." She stated that she was "disturbed by the fact that [Shelby County]'s counsel had completely neglected to bring this fact to the Court's attention during the August 21, 2023 meeting." As a result, she decided that she "could not simply rely upon the candor of [Shelby County]'s counsel to ensure this matter proceeded in the manner discussed during the August 21, 2023 meeting." According to Chancellor Jefferson, Mr. Gallagher "came into the August 21, 2023 meeting with unclean hands" because he had already sent out thousands of notices of the hearing. Chancellor Jefferson said it "appeared" to her that Shelby County "intended to go forward with this lawsuit regardless of the outcome of the August 21, 2023 meeting or the prompt execution of the Consent Order agreed to by all the parties present." For that reason, she had entered the *sua sponte* order of dismissal on August 29.

Chancellor Jefferson noted that the "primary basis" for Shelby County's recusal motion appeared to be the conversation that allegedly occurred regarding Mr. Gallagher's consultation with Judge Blackett. Chancellor Jefferson said she had been advised that Mr. Gallagher "did, in fact, threaten to file a complaint against Chancellor Jefferson with the Board of Judicial Conduct if she did not yield to [Shelby County]'s efforts to forcefully strongarm this lawsuit to a hasty resolution." Thus, Chancellor Jefferson claimed that any "reference" she made to that situation was simply "to confirm to [Shelby County]'s counsel

that the Court would steadfastly uphold its obligation to adjudicate matters before it fairly, justly and impartially[.]" She added, "[Shelby County]'s attempt to characterize these comments as forming the basis for recusal only further demonstrates the pattern of overreaching throughout the course of this lawsuit, to which this Court will not yield."

Chancellor Jefferson acknowledged that prior to this case, she had been largely adhering to the procedures followed by the other two parts of chancery court for real property tax sales. She said she was "amenable to following the historical practices" established in chancery court prior to her election "to some extent." However, she said it was her understanding that a personal property tax suit had not been filed for approximately ten years, so the procedure for tax sales of this type would be less familiar to all three chancellors and the court clerk, "all of whom were likely not in their respective positions" at the time of the last sale. Thus, she said that she had exercised her discretion in requesting an amendment to the procedure for assignment where necessary, as demonstrated by the agreement at the August 21 meeting, "to prevent a tremendous burden on one Part, that potentially harbors the Court's ability to effectively manage its caseload."

The chancellor also noted Shelby County's reference to a hearing on December 14, 2023, the day after her interaction with Mr. Gallagher, in which she had "diverged from the historical practice of Chancery Court" on a matter. She acknowledged that chancery courts had historically awarded taxes for the full year to Shelby County out of the excess proceeds due to the former owner at the time of the tax sale. However, she claimed that she "chose to exercise [her] judicial discretion" to make a different award in that case based on the fact that the former owner had not owned the property for the entire year and should not be penalized with tax obligations for the time period when it was not the owner. Thus, although she admittedly chose to "diverge from precedent," she claimed this was an act of an "impartial tribunal" based on the facts and the law and what the court determined to be the most ethical decision.

In summary, Chancellor Jefferson characterized the "crux of the dispute" in this case as being due to "[Shelby County]'s failure to consult the Court before setting matters for hearing in Part I." She claimed that each reference Shelby County made to a basis for recusal "has involved this Court's refusal to relent to [Shelby County]'s attempts to disregard the processes and procedures this Court has implemented for ALL litigants to adhere to in seeking relief." She added, "[Shelby County] must follow the Court's preferences for obtaining dates just like every other litigant and cannot unilaterally bend the rules in its favor in an effort to expedite its recovery of tax funds." She then suggested that Shelby County was simply "anxious to get this suit resolved because of its mishandling of the most recent real property tax sale, which stands to cost taxpayers over . . . ($1,200,000), but this Court will not be railroaded by [Shelby County] into rushing through the proper handling of this lawsuit." She said that Shelby County "cannot and will not usurp this Court's authority to circumvent the practices all litigants must follow in an effort to quickly recoup funds lost in other tax sales." The chancellor denied the motion for

recusal, finding that Shelby County "failed to demonstrate any bias whatsoever by this Court which might be perceived to be so pervasive as to deny it a fair trial."

Shelby County timely filed a petition for an accelerated interlocutory appeal before this Court pursuant to Tennessee Supreme Court Rule 10B. This Court entered a stay of all proceedings in the trial court pending further order of this Court. Based on our review, we have determined that neither an answer, additional briefing, nor oral argument is necessary, and we elect to act summarily on the appeal in accordance with Rule 10B, §§ 2.05 and 2.06.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for recusal under a *de novo* standard of review. Tenn. Sup. Ct. R. 10B § 2.01. The only issue we may consider in a Rule 10B appeal is whether the trial judge should have granted the motion for recusal. *Elseroad v. Cook*, 553 S.W.3d 460, 462 (Tenn. Ct. App. 2018); *Boren v. Hill Boren, PC*, 557 S.W.3d 542, 546 (Tenn. Ct. App. 2017). We do not review the merits or correctness of the trial court's other rulings. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012).

## III. DISCUSSION

The Tennessee Supreme Court recently summarized the standards that guide courts in a recusal case:

> "Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing *Davis* [*v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001)]; *see also State v. Griffin*, 610 S.W.3d 752, 757-58 (Tenn. 2020). To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.
> To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC

2.11(A).

Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606 S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis*, 38 S.W.3d at 564-65).

The intermediate appellate courts have explained that the proponent of a recusal motion bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case. *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016, at *2 (Tenn. Ct. App. Apr. 14, 2022). A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal. *Raccoon Mtn. Caverns and Campground, LLC v. Nelson*, No. E2022-00989-COA-T10B-CV, 2022 WL 3100606, at *3 (Tenn. Ct. App. Aug. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008)).

Furthermore, rulings adverse to the proponent of a recusal motion are not, standing alone, grounds for recusal. [*State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008)]; *Davis*, 38 S.W.3d at 564; *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012). "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). "[T]he mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal." *Davis*, 38 S.W.3d at 565 (citing *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995)). The "adversarial nature of litigation" makes it necessary for trial judges to "assess the credibility of those who testify before them, whether in person or by some other means," and "the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse." *Id.* "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartial[it]y issue for strategic advantage, which the courts frown upon." *Id.*

*Adams v. Dunavant*, 674 S.W.3d 871, 878-79 (Tenn. 2023).

Here, Shelby County alleges bias. "Bias is often divided into two types, each of which implicates a different standard for determining whether recusal is warranted." *C.D.B. v. A.B.*, No. M2018-00532-COA-T10B-CV, 2018 WL 1976119, at *6 (Tenn. Ct. App. Apr. 26, 2018). Specifically, "[t]he source of the alleged bias alters the burden that

the party seeking recusal must bear." *Schmeeckle v. Hamilton Cnty.*, No. E2023-01533-COA-T10B-CV, 2023 WL 8093111, at *5 (Tenn. Ct. App. Nov. 20, 2023). "Where a bias stems from an extrajudicial source, rather than from events or observations during litigation of a case, it may be sufficient to justify recusal if the judge's behavior raises 'reasonable questions about the judge's impartiality." *C.D.B.*, 2018 WL 1976119, at *6 (quoting *Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct. App. Sept. 16, 2016)). On the other hand, "'[i]f the bias is alleged to stem from events occur[r]ing in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial.'" *Boren*, 557 S.W.3d at 552 (quoting *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014)). A "pervasive bias" is one that "reflect[s] an utter incapacity to be fair." *Schmeeckle*, 2023 WL 8093111, at *5 (quoting *Groves*, 2016 WL 5181687, at *5). However, "[j]udicial expressions of impatience, dissatisfaction, annoyance, and even anger towards counsel, the parties, or the case, will not ordinarily support a finding of bias or prejudice unless they indicate partiality on the merits of the case." *Id.* (quoting *Groves*, 2016 WL 5181687, at *5). The term "extrajudicial" is defined as "'[o]utside court' or 'out-of-court.'" *C.D.B.*, 2018 WL 1976119, at *6 (quoting *Black's Law Dictionary* 665 (9th ed. 2009)).

Applying these standards *de novo* to the facts of this case, we readily conclude that Shelby County has demonstrated pervasive bias to warrant recusal. We acknowledge that some of the statements made by Chancellor Jefferson throughout this litigation could be characterized as mere dissatisfaction, annoyance, or anger toward counsel, the parties, and this case. However, the fact remains that she approached Mr. Gallagher in the common area of the clerk's office, within earshot of numerous employees, in an "extremely angry and upset" manner, stating that she "did not like being threatened" and that he and his boss could both "Bring it." She also accused Mr. Gallagher of choosing to speak to Judge Blackett because Judge Blackett is a black woman. Notably, in denying the motion for recusal, Chancellor Jefferson did not deny that she made these statements in the course of their conversation. She simply stated that she referenced the situation "to confirm to [Shelby County]'s counsel that the Court would steadfastly uphold its obligation to adjudicate matters before it fairly, justly and impartially."

During this same timeframe, however, Mr. Gallagher appeared at a routine court tax docket and addressed the court to obtain a hearing on the Rule 59 motion, but Chancellor Jefferson "responded that she was not going to set the Rule 59 motion for a hearing." Mr. Gallagher offered to file a written motion to request a hearing date, but she said "she would strike it from the calendar." It was only after Shelby County filed a written motion for a hearing date, and appeared for a hearing on *it*, that the motion to alter or amend, filed in September, was finally set for a hearing date in March. These inexplicable actions "reflect an utter incapacity to be fair." *Schmeeckle*, 2023 WL 8093111, at *5 (quoting *Groves*,

2016 WL 5181687, at *5).[1]

## IV. CONCLUSION

For the aforementioned reasons, we reverse the denial of the motion for recusal. This case is remanded for reassignment and such further proceedings as may be necessary. Costs of this appeal are taxed to the appellant, Shelby County, Tennessee, for which execution may issue if necessary.

_____
CARMA DENNIS McGEE, JUDGE

---

[1] This Court has recognized that

> [A] danger of manipulation in order to require a change of judge exists where the basis for recusal is criticism or irritation directed at an attorney. A rule that allowed an attorney to have his case transferred to another judge by quarreling with the court is not in the interest of justice. If every time a judge criticized the conduct of an attorney in the trial of a case, no matter how much it was warranted, a ground for recusal might exist, it would allow for the kind of forum shopping and cause for delay that is disfavored.

*Denney ex rel. Doghouse Computers, Inc. v. Rather*, No. M2022-01743-COA-T10B-CV, 2023 WL 316012, at *5 n.5 (Tenn. Ct. App. Jan. 19, 2023) (quoting *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *4-5 (Tenn. Ct. App. Feb. 11, 2014)). Here, however, there is no suggestion of forum shopping or manipulation by Shelby County. Since the case was filed, Shelby County has attempted to have this case *remain* in Part I of chancery court, despite steadfast opposition from the chancellor.