IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 17, 2017

## RICKY L. BOREN ET AL. v., PC HILL BOREN ET AL.

**Appeal from the Chancery Court for Madison County**
**No. 75056      Robert E. Lee Davies, Senior Judge**

_____

### No. W2017-02255-COA-T10B-CV

_____

This is an accelerated interlocutory appeal as of right, pursuant to Tennessee Supreme Court Rule 10B, from the trial court's denial of a motion for recusal. Having reviewed the petition for recusal appeal, pursuant to the de novo standard as required under Rule 10B, § 2.01, we affirm the trial court's decision to deny the motion for recusal.

**Tenn. Sup. Ct. R. 10B Accelerated Interlocutory Appeal;**
**Judgment of the Chancery Court Affirmed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which THOMAS R. FRIERSON II and BRANDON O. GIBSON, JJ., joined.

T. Robert Hill and Tamara L. Hill, Jackson, Tennessee, for the appellants, Hill Boren, PC, and T. Robert Hill.

Lewis L. Cobb and Teresa A. Luna, Jackson, Tennessee, for the appellees, Ricky Lee Boren, and Jeffrey P. Boyd.

### OPINION

The underlying dispute arises from an Agreement for Future Transfer of Controlling Interest of Hill Boren, PC, a law firm in Jackson, Tennessee. The plaintiffs are attorneys Ricky L. Boren and Jeffrey P. Boyd. The defendants are attorney T. Robert Hill and Hill Boren, PC, ("Petitioners").

At the inception of this case, the Chancellor for Madison County, Tennessee, James F. Butler, voluntarily recused himself due to his familiarity with the parties. Senior Judge Robert E. Lee Davies of Williamson County, Tennessee was assigned to the case and has presided over this matter ever since. This appeal arises from Judge Davies' decision to deny Petitioners' motion to recuse.

Tenn. Sup. Ct. R. 10B governs appeals from orders denying motions to recuse. Pursuant to § 2.01 of Rule 10B, a party is entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal. The appeal is perfected by filing a "petition for recusal appeal" with the appropriate appellate court. Tenn. Sup. Ct. R. 10B, § 2.02.

Our standard of review is de novo. *See* Tenn. Sup. Ct. R. 10B, § 2.01. "De novo" is defined as "anew, afresh, a second time." *Simms Elec., Inc. v. Roberson Assocs., Inc.*, No. 01-A-01-9011CV00407, 1991 WL 44279, at *2 (Tenn. Ct. App. Apr. 3, 1991) (quoting *Black's Law Dictionary* 392 (5th ed. 1979)). Thus, we examine the factual record anew, with no presumption of correctness, and reach our own conclusion.

If we determine, after reviewing the petition and supporting documents, that no answer is needed, we may act summarily on the appeal. Tenn. Sup. Ct. R. 10B, § 2.05. Otherwise, this court may order an answer and may also order further briefing by the parties. *Id.* Tenn. Sup. Ct. R. 10B, § 2.06 also grants this court the discretion to decide the appeal without oral argument.

Based upon our review of the petition and supporting documents, we have determined that neither an answer, additional briefing, or oral argument are necessary, and we elect to act summarily on the appeal in accordance with Tenn. Sup.Ct. R. 10B, §§ 2.05 and 2.06.

**ISSUES**

Petitioners identify numerous issues for us to consider. The issues, as framed by Petitioners, are stated as follows:

1. The Trial Court Abused Its Discretion in Denying Defendants' Motion to Disqualify Judge Robert E. Lee Davies.

   A. The trial court's failure to apply the correct legal standard in reaching a decision on recusal/disqualification exhibited an abuse of discretion requiring reversal.

2. This Court should reverse the trial court's decision to deny Defendants' Motion to Disqualify Judge Robert E. Lee Davies.

   A. The trial court has exhibited bias for plaintiffs and prejudice toward defendants in failing to follow the Tennessee Rules of Civil Procedure.

B. The trial court has exhibited bias for plaintiffs and prejudice toward defendants in failing to follow the Tennessee Rules of Chancery Court.

C. The trial court has exhibited bias for plaintiffs and prejudice toward defendants in failing to follow Tennessee Statutory Law.

D. The trial court has exhibited bias for plaintiffs and prejudice toward defendants in failing to follow controlling common law of the State of Tennessee.

E. The trial court has exhibited bias for plaintiffs and prejudice toward defendants in failing to uphold the Supreme Court Rules of Judicial Conduct.

F. The trial court has exhibited bias for plaintiffs and prejudice toward defendants is [sic] failing to follow and enforce the Tennessee Rules of Evidence.

G. The trial court has denied defendants due process.

H. The trial court has abused [its] discretion by replacing the Rules and the Law with [its] personal preferences.

I. When a matter is stayed, a party cannot file motions and have them heard.

J. The trial court failed to adequately address the Motion to Disqualify under Supreme Court Rule 10B.

## ANALYSIS

Although Petitioners have articulated numerous issues for us to consider, the only issue we may consider in a Rule 10B appeal is whether the trial judge should have granted Petitioners' motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). Based on this limitation, we have determined that the issue should be analyzed in three parts to determine: (1) whether Judge Davies engaged in an inappropriate ex parte communication with Chancellor James F. Butler; (2) whether Judge Davies applied an incorrect legal standard in reaching his decision not to disqualify himself; and (3) whether the trial court made numerous erroneous rulings that reveal bias and prejudice against Petitioners.

## I.      EX PARTE COMMUNICATION

Petitioners allege that Chancellor Butler and Judge Davies engaged in an ex parte communication that caused Judge Davies to be biased and prejudiced against Petitioners.

The rule in the Code of Judicial Conduct that pertains to ex parte communications states in pertinent part:

> (A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:
>
>> (1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:
>>
>>> (a) the judge reasonably believes that no party will gain procedural, substantive, or tactical advantage as a result of the ex parte communication; and
>>>
>>> (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.
>>
>> .    .    .
>>
>> (3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

Tenn. Sup. Ct. R. 10, RJC 2.9.

Petitioners' contention is that Chancellor Butler said something to Judge Davies while they had lunch on December 20, 2016, to prejudice him against Petitioners. The record, however, contains no facts to support a finding that Chancellor Butler and Judge Davies discussed this case, the parties, or the attorneys. Stated another way, the accusation that Chancellor Butler said something to Judge Davies that caused Judge Davies to become prejudiced against Petitioners or their lawyers is solely based on a supposition, not a fact, and Rule 10B requires parties to present specific facts that support their motion for recusal. *See* Tenn. Sup. Ct. R. 10B, § 1.01 ("The motion shall state, with specificity, all factual . . . grounds supporting disqualification of the judge. . . .")

The record reveals that Chancellor Butler is a former partner at Spraggins, Barnett and Cobb, PLC, the firm representing Plaintiffs Boren and Boyd, and that Chancellor Butler's brother is a partner in that firm. While this fact reveals why Chancellor Butler recused himself from this case, it fails to show that Chancellor Butler would attempt to prejudice Judge Davies against Petitioners. Not only is there no evidence in this record to support the accusations by Petitioners, Judge Davies states unequivocally in his order denying the motion for recusal that

> [t]he Court did go to lunch with Chancellor Butler after the hearing on December 20, 2016; however, Chancellor Butler never discussed the proceedings in this case or in any way insinuated to the Court how the Court should rule. Chancellor Butler was nothing more than a gracious host to an out of town judge.

Judge Davies also correctly states in his order that "[t]he code of judicial conduct does not require judges to remain isolated from other members of the bar and from the community." *See State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008).

We also find it significant that Judge Davies also disclosed in open court, at the commencement of his involvement in this case, that he had a telephone conversation with Chancellor Butler that merely pertained to a scheduling issue, which is permitted. *See* Tenn. Sup. Ct. R. 10, RJC 2.9. The transcript from the December 20, 2016 hearing reveals the following:

> The Court: So, let me tell you how I came to be on this case and how the restraint [sic] order came to be signed. I guess a couple of weeks ago, maybe, right in there, I received a call from your Chancellor Butler, and he indicated to me that this case had been filed and that after he had read the complaint . . . he felt it — he would be very uncomfortable hearing the case because he knows everybody here.
>
> And at that time he had already contacted the AOC. And the AOC sent me, I guess, a copy of the complaint and the proposed restraining order. That is all I had.
>
> Chancellor Butler indicated to me that he was just going to — he wasn't — he didn't want to sign anything and he was just going to set this for a hearing on the 14th, which would have been — or the 12th — I can't — anyway, before the date of the proposed dissolution.
>
> Mr. Hill had indicated he was going to dissolve the corporation. Had I been able to come on that day, I would not have signed anything either, but I couldn't. And, to me, most pressing — the problem was Mr. Hill was going

- 5 -

to dissolve the corporation before we could have anything heard. I thought that would be a bad mistake.

So my intent was to sign the TRO and preserve the status quo. It was not to cast dispersions on either side. I want Mr. Hill to know that.

Based on the foregoing, there is no factual basis upon which to conclude that an inappropriate ex parte communication occurred between Chancellor Butler and Judge Davies.

Having addressed the merits of the accusation, we also note that Petitioners waited ten months after learning of the luncheon to claim that an inappropriate ex parte communication took place. A motion for recusal should be filed when the facts forming the basis of that motion become known. *Davis v. Tenn. Dept. of Employment Security*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). The failure to seek recusal in a timely manner may result in the waiver of any complaint concerning the judge's impartiality. *Id*. Stated another way, "[o]ne cannot know of improper judicial conduct, gamble on a favorable result by remaining silent as to that conduct, and then complain that he or she guessed wrong and does not like the outcome." *Id*. (quoting *State v. Lotter*, 586 N.W.2d 591, 610 (Neb. 1998)).

Instead of promptly seeking recusal, Petitioners waited until an adverse ruling on civil contempt was handed down, almost ten months after the luncheon at issue, to brandish the ex parte communication sword. Accordingly, we hold that Petitioners' failure to seek recusal in a timely manner constitutes a waiver of this issue. *See id*.

For the foregoing reasons, we find no merit to the contention that an inappropriate ex parte communication transpired between Chancellor Butler and Judge Davies.

## II. THE LEGAL STANDARD FOR MOTIONS TO RECUSE

A motion to recuse should be granted when judges have any doubt about their ability to preside impartially in a case or when "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)); Tenn. Sup.Ct. R. 10, RJC 2.11(A). The relevant portion of the Code of Judicial Conduct provides:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

>    (1) The judge has a personal bias or prejudice concerning a party or party's lawyer, or personal knowledge of facts that are in dispute in the proceedings.

Tenn. Sup. Ct. R. 10, RJC 2.11(A).

The terms "bias" and "prejudice" generally refer to a state of mind or attitude that works to predispose a judge for or against a party; however, "[n]ot every bias, partiality, or prejudice merits recusal." *Alley*, 882 S.W.2d at 821. To merit disqualification of a trial judge, "prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id*. (quoting *State ex rel Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. App. 1990)).

However, "[i]f the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id*. It is for this reason that "[a] trial judge's adverse rulings are not usually sufficient to establish bias." *Cannon*, 254 S.W.3d at 308. "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Id*. (quoting *Alley*, 882 S.W.2d at 821).

The rationale for this proposition has been explained by our Supreme Court as follows:

>    [T]he mere fact that a judge has ruled adversely to a party or witness...is not grounds for recusal. *See Hines*, 919 S.W.2d at 578. Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon. *See Kinard*, 986 S.W.2d at 228.

*Davis*, 38 S.W.3d at 565.

Petitioners contend that Judge Davies applied an incorrect legal standard in reaching his decision not to disqualify himself. As they argue in their petition:

>    Judge Davies was required to recuse himself if he had any doubt that the [sic] could preside impartially over this case or if a reasonable person, knowing the facts known to Judge Davies, would find a reasonable basis

for questioning Judge Davies [sic] impartiality. Judge Davies was required to recognize that if his actions and conduct of the case appear to be biased, those actions and conduct damage the very fabric and integrity of the judicial system. Judge Davies is required to be objective, rather than to become defensive, in evaluating the evidence presented in support of disqualification. Judge Davies must ask himself what a reasonable, disinterested person would think about his impartiality. Judge Davies must remember that he must be perceived as impartial in order to deny the Motion to Disqualify. In fact, Judge Davies must disqualify himself even if he believes he can be impartial if his impartiality can be reasonably questioned.

(footnotes omitted).

We respectfully disagree with the contention that Judge Davies applied an erroneous legal standard in making his decision. Having reviewed the order denying the motion for recusal, it is readily apparent that Judge Davies applied the correct legal standard. This is clear from two paragraphs of the trial court's order, which read:

The Court has received a motion to disqualify filed by Defendants T. Robert Hill and Hill Boren, P.C. Pursuant to Rule 10B of the Rules of the Tennessee Supreme Court, a litigant is entitled to seek disqualification of a trial judge by filing a motion that: 1) is supported by an affidavit under oath with personal knowledge or by other appropriate material; 2) states: with specificity all factual and legal grounds supporting disqualification of the judge; and 3) affirmatively states that it is not being presented for an improper purpose. (Tenn. Sup. Ct. R. 10B, § 1.01).

. . . .

Defendants have lodged numerous complaints regarding the Court's rulings on other various motions. A recusal motion is "not the appropriate means" to challenge a trial court's ruling based on "its interpretation of the facts and the law." *State v. Lowe*, 2013 WL 706318 at *3 (Tenn. Crim. App. 2013). Prejudice must be of a personal character directed at the litigant and must come from an extra judicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case. *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Recusal would be required as a matter of course if adverse rulings were the only reason to support a motion to recuse. Trial Courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the partiality issue for strategic advantage, which the courts frown upon. *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001). In this

case, there has been no extra judicial source of any nature directed at Defendants. Defendants will have the opportunity to challenge the substantive rulings of this Court on appeal in the event they do not prevail at trial.

Having reviewed these and all other aspects of the trial court's order, we conclude that Judge Davies applied the correct legal standards when ruling on the motion to recuse. This fact, however, does not necessarily mean that the trial judge reached the correct decision. Therefore, we shall consider whether Judge Davies' adverse rulings evince a bias against Petitioners.

### III. BIAS EVIDENT FROM ADVERSE RULINGS

Although not articulated as such, Petitioners essentially assert that numerous adverse and erroneous rulings reveal bias and prejudice against them. This contention is apparent from reading Petitioners' Statement of the Case:

> Beginning with the issuance of an illegal ex parte TRO, the Court has consistently ignored the Rules of Civil Procedure, the Rules of Evidence, Tennessee common and statutory law and Judicial Rules of Conduct to aid Boren and Boyd to keep Hill Boren, PC as a primary defendant in this case and to destroy it financially while abdicating his responsibilities and delegating much of his authority to plaintiffs' counsel, Lewis Cobb. Until September 27, 2017, the Court had never conducted a single evidentiary hearing. Instead, he entered orders based on arguments of plaintiffs' counsel and/or sua sponte based on his own "research" or "investigation" to destroy Hill Boren, PC and strip it of income and resources and punish T. Robert Hill. Then, on September 27, 2017, the Court revealed his prejudice against Hill.

(footnotes omitted).

"A trial judge's adverse rulings are not usually sufficient to establish bias." *Cannon*, 254 S.W.3d at 308 (citing *Alley*, 882 S.W.2d at 821). Even rulings that are "erroneous, numerous and continuous, do not, without more, justify disqualification." *Id*. (quoting *Alley*, 882 S.W.2d at 821). There is good reason for this proposition: "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." *Davis*, 38 S.W.3d at 565.

Thus, the contention that Judge Davies should have granted the motion to disqualify because his rulings would prompt an objective observer to have a reasonable

basis for questioning his impartiality, without more, fails as a matter of law. *See Cannon*, 254 S.W.3d at 308; *Davis*, 38 S.W.3d at 565; *Alley*, 882 S.W.2d at 821. Nevertheless, Petitioners assert that the factual and legal errors in the rulings are so egregious that a reasonable person would question Judge Davies' impartiality.

In rare situations, the cumulative effect of the "'repeated misapplication of fundamental, rudimentary legal principles that favor[] [one party] substantively and procedurally' can be the basis for recusal." *Krohn v. Krohn*, No. M2015-01280-COA-R10B-CV, 2015 WL 5772549, at *7 (Tenn. Ct. App. Sept. 22, 2015) (quoting *Hoalcraft v. Smithson*, No. M2000-01347-COA-R10-CV, 2001 WL 775602, at *16-17 (Tenn. Ct. App. July 10, 2001)). Therefore, we may examine the challenged rulings to determine whether they contain a "misapplication of fundamental, rudimentary legal principles." *Id*. However, we may not rule on the merits of any order other than the order denying the motion to recuse. *See Duke*, 398 S.W.3d at 668.

We have reviewed the rulings at issue and have determined that they do not contain errors that rise to the level of "repeated misapplication[s] of fundamental, rudimentary legal principles. . . ." *Krohn*, 2015 WL 5772549, at *7 (quoting *Hoalcraft*, 2001 WL 775602, at *16.) We have also determined that these rulings do not create the appearance of bias against Petitioners. Although we have not and will not rule on the merits of the challenged decisions, we are intrigued by Petitioners' challenge to the propriety of some of the trial court's reasoning by stating:

> In his order, **[Judge Davies] chose to rely on an unreported appellate case** and to cherry-pick language out of that case to hold [Petitioners] to a much higher standard of proving the pervasiveness of his bias and prejudice. **Judge Davies also choses** [sic] **to rely on a criminal appellate case to say that the prejudice must be personal and must come from an extra-judicial source**. He ignores the fact that his prejudice is of a personal nature, in that he has substituted his personal beliefs, biases and prejudices for the rules, law and evidence.

(Emphasis added).

This criticism lacks merit. For example, Petitioners find fault with Judge Davies' reliance on "unreported" appellate cases, which are more correctly identified as unpublished opinions. While Petitioners criticize this reliance, there is nothing inappropriate about a judge relying on an unpublished opinion. In fact, judges across this state rely on unpublished opinions with great regularity. We rely on several unpublished opinions in this opinion. Moreover, judges are authorized to rely on unpublished opinions by Tenn. Sup. Ct. R. 4(G)(1), which states:

> An unpublished opinion shall be considered controlling authority between the parties to the case when relevant under the doctrines of the law of the case, res judicata, collateral estoppel, or in a criminal, post-conviction, or habeas corpus action involving the same defendant. **Unless designated "Not For Citation," "DCRO" or "DNP" pursuant to subsection (E) of this Rule, unpublished opinions for all other purposes shall be considered persuasive authority**. Unpublished opinions of the Special Workers' Compensation Appeals Panel shall likewise be considered persuasive authority.

Furthermore, we find this criticism disingenuous because Petitioners rely upon an unpublished opinion in their petition for recusal; namely, *In re Adison P.*, No. W2015-00393-COA-T10B-CV, 2015 WL 1869456 (Tenn. Ct. App. April 21, 2015).

Petitioners' criticism of Judge Davies for relying on "a criminal appellate case to say that the prejudice must be personal and must come from an extra-judicial source" is also without a legal foundation. Simply put, there is nothing inappropriate about a judge in a civil case relying on an applicable principle of law from a criminal appellate case. Moreover, it is not uncommon. For example, in this opinion, we rely on three criminal court appellate decisions, one by our Supreme Court and two by the Court of Criminal Appeals. We rely on *Alley v. State*, 882 S.W.2d at 821, to make the point that prejudice must be of a personal character directed at the litigant, must come from an extra judicial source, and must result in an opinion on the merits on some basis other than what the judge learned from participation in the case. We rely on *State v. Lowe*, 2013 WL 706318 at *3, for the proposition that a recusal motion is "not the appropriate means" to challenge a trial court's ruling based on "its interpretation of the facts and the law." We also rely on *State v. Cannon*, 254 S.W.3d at 308, as did Judge Davies in his order, to note that the Code of Judicial Conduct does not require judges to remain isolated from other members of the bar and from the community.

Petitioners also erroneously contend that Judge Davies "cherry-picked" language out of an unreported case "to hold [Petitioners] to a much higher standard of proving the pervasiveness of his bias and prejudice." Unfortunately for Petitioners, the language Judge Davies cherry-picked out of the unreported case is a correct statement of the law. By that we mean Petitioners do have a higher burden of establishing bias when Petitioners allege that the bias stems from events occurring in the course of the litigation of the case. As now-Justice Kirby wrote in the unpublished opinion of *Runyon v. Runyon* while serving on the Court of Appeals of Tennessee:

> The party seeking recusal bears the burden of proof, and "any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case." *McKenzie*, 2014 WL 575908, at *3. "**If the bias is alleged to stem from events occur[r]ing in the course of the litigation**

- 11 -

**of the case, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial**." *Id*.

*Runyon v. Runyon*, No. W2013-02651-COA-T10B, 2014 WL 1285729, at \*6 (Tenn. Ct. App. Mar. 31, 2014); *see also Carney v. Santander Consumer USA*, No. M2010-01401-COA-R3-CV, 2015 WL 3407256, at \*5 (Tenn. Ct. App. May 28, 2015) (emphasis added).

Earlier in this opinion we ruled that there was no evidence of an improper ex parte communication. Therefore, the alleged bias against Petitioners must stem from events occurring in the course of the litigation of the case and "[i]f the bias is alleged to stem from events occur[r]ing in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *Runyon*, 2014 WL 1285729, at \*6.

Having reviewed the adverse rulings upon which Petitioners base their claim of bias and prejudice, we find no factual basis upon which to conclude that a person of ordinary prudence in Judge Davies' position, knowing all of the facts known to the judge, would find a reasonable basis for questioning his impartiality. *See Davis*, 38 S.W.3d at 564; Tenn. Sup.Ct. R. 10, RJC 2.11(A). Therefore, we affirm the denial of the motion for recusal.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Petitioners.

_____
FRANK G. CLEMENT JR., P.J., M.S.