IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 30, 2024

IN RE CONSERVATORSHIP OF SUSAN DAVIS MALONE

Appeal from the Probate Court for Shelby County
No. PR-24906          Joe Townsend, Judge

No. W2024-00134-COA-T10B-CV

Carma Dennis McGee, J., dissenting.

I must respectfully dissent from the majority opinion finding that recusal is not justified in this case. Like Judge Armstrong, I believe that the majority "fails to consider the cumulative effects of the trial court's actions, and wholly fails to consider the fact that the ultimate result of these actions is usurpation of the autonomous decisions Ms. Malone made for her own care when she was competent to do so." *Malone v. Malone*, No. W2023-00843-COA-T10B-CV, 2023 WL 8457951, at *14 (Tenn. Ct. App. Dec. 6, 2023) (Armstrong, J., dissenting).

The majority thoroughly and thoughtfully discusses each of the alleged bases for recusal in this matter, but several times concludes that many of the trial court's actions "standing alone" are not a sufficient basis for recusal. Specifically, in regard to a portion of the actions, the majority states:

> "The fact that Attorneys disagree with and challenge the adverse ruling stemming from the December 15, 2023 order is not, *standing alone*, a basis for recusal."

> . . .

> "For the above-stated reasons, the trial court's setting of the evidentiary hearing on November 6, 2023, does not, *without more*, present a sufficient basis for recusal."

> . . .

> "Therefore, these actions, *standing alone*, are not a basis for recusal." (*emphasis added*).

The majority correctly sets out the extensive and turbulent procedural history of this case, and I will not tax the length of my dissent by reiterating it. Rather, I will focus on the trial court's actions which I believe justify recusal, and the cumulative effect of all of the trial court's conduct in this matter.

To have confidence in our judicial system, litigants must perceive that the system is based on the principles of fairness and impartiality. Our Supreme Court has explained:

> The principles underpinning judicial recusal rules have long been recognized by this Court as being of fundamental importance to the administration of justice and the judicial system.
> Well over a century ago, this Court observed the importance of both the appearance and perception of an impartial judiciary, stating:
>
>> The Constitution of this State provides that no judge of the Supreme or inferior courts shall preside on the trial of any cause in the event of which he may be interested ... Art. 5, s. 11. This provision is certainly broad enough to fortify the integrity of the courts against suspicion; for the mere blemish of suspicion is, to the judicial ermine, a blot of defilement.... [I]t is a familiar remark of Sir William Blackstone that the administration of justice should not only be chaste but unsuspected.
>> ....
>> [N]o judge should preside in a cause, or render any judgment, or make any order, where he can by possibility be suspected of being warped by the influence of fear, favor, partiality, or affection. When once a court has lost the charm of integrity and justice, with which it should ever be invested, it forfeits its influence for good, and degrades the majesty of the law.
>> ....
>> It is [the judge's] exalted province to pronounce upon the rights of life, liberty, and property, to make the law respected and amiable in the sight of the people, to dignify that department of the government upon which, more than all others depend the peace, the happiness, and the security of the people. But when once this great office becomes corrupted, when its judgments come to reflect the passions or the interest of the magistrate rather than the mandates of the law, the courts have ceased to be the conservators of the common weal, and the law itself is debauched into a prostrate and nerveless mockery.

*Harrison v. Wisdom,* 54 Tenn. (7 Heisk.) 99, 110, 111, 112 (1872); *see also Neely v. State,* 63 Tenn. (4 Baxt.) 174, 182-83 (1874).
. . .

More recently, we have observed that "'[i]f the public is to maintain confidence in the judiciary, it is required that cases be tried by unprejudiced and unbiased judges.'" *State v. Rimmer*, 250 S.W.3d 12, 37 app. (Tenn.2008) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn.Crim.App.1994)); see also State v. Reid, 213 S.W.3d 792, 815 (Tenn.2006) (" '[T]he preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial.' ") (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn.Ct.App.1998)); *Bd. of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 548 (Tenn.2004); *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn.2001) ("If the public is to maintain confidence in the judiciary, cases must be tried by unprejudiced and unbiased judges."); *State v. Lynn*, 924 S.W.2d 892, 898 (Tenn.1996) ("It is the appearance that often undermines or resurrects faith in the system. To promote public confidence in the fairness of the system and to preserve the system's integrity in the eyes of the litigants and the public, 'justice must satisfy the appearance of justice.'") (quoting *Offutt v. United States*, 348 U.S. 11, 13, 75 S.Ct. 11, 99 L.Ed. 11 (1954)); *Leighton v. Henderson*, 220 Tenn. 91, 414 S.W.2d 419, 421 (1967) ("The purpose of Article 6, § 11 of our Constitution is to insure every litigant the cold neutrality of an impartial court.").

*Smith v. State*, 357 S.W.3d 322, 339-40 (Tenn. 2011)

When a motion for recusal of a judge is presented, it must be analyzed under the reasonable person standard, which is an objective measure. As we have explained:

A motion to recuse should be granted when judges have any doubt about their ability to preside impartially in a case or when "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) ); Tenn. Sup.Ct. R. 10, RJC 2.11(A). The relevant portion of the Code of Judicial Conduct provides:

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the

proceeding.  Tenn. Sup. Ct. R. 10, RJC 2.11(A).

*Boren v. Hill Boren, PC*, 557 S.W.3d 542, 548 (Tenn. Ct. App. 2017)

Turning to the specific events which have taken place in this matter, the trial court held an evidentiary hearing on November 6, 2023.  It is not the trial court's decision to conduct an evidentiary hearing with which I take issue, but rather the manner in which it occurred. I believe that the trial court's actions in setting the hearing and conduct during the hearing would lead a person of ordinary prudence to find a "reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis*, 38 S.W.3d at 564-65)

The trial court entered an order on October 31, 2023 which set a "status conference on November 6, 2023 at 2:30 p.m."  The court stated that the express purpose of this conference was "scheduling the evidentiary hearings to carry out the terms of [the October 31, 2023 order]."  When the parties appeared under the assumption that they were attending a status conference, the court proceeded to set the evidentiary hearing to be held minutes later.  Particularly concerning is the exchange which occurred between the trial court and Mr. Autry:

> THE COURT: So I'm looking for some feedback from the attorney for the parties—the attorneys so who would like to go first as far as setting these matters? In other words—let me do this since there seems to be some confusion. Mr. Autry, let me ask you first, how much time do you need for the hearing?
> MR. AUTRY: With all due respect and candor to the Court, Your Honor, I don't believe the Court is authorized to move forward with an evidentiary hearing based on the mandate from the Court of Appeals.
> THE COURT: All right.
> MR. AUTRY: But whatever [date] the Court sets, I will comply with.
> THE COURT: Let me ask you a second question, Mr. Autry. Who is your client?
> MR. AUTRY: Who is my client?
> THE COURT: In this case.
> MR. AUTRY: Well, I am—I'm the petitioner, Ms. Bleavins is the petitioner in all the matters that I'm aware of.
> THE COURT: So you're your own client and your wife is your own client?
> MR. AUTRY: I think the pleadings speak for themselves so I represent my wife, I represent myself, my other partner that you have summoned to court before, our entire firm represents us in the matters before the Court.
> THE COURT: Okay. Do you or your wife plan on testifying in this case?

MR. AUTRY: I don't know at this point, Your Honor.

THE COURT: Do you see that you might need to testify since we are moving to evidentiary hearings? You asked me to set aside everything in your motions to alter or amend because there was no evidentiary hearings. So now we are proceeding to evidentiary hearings.

MR. AUTRY: I don't know as we sit here today, Your Honor. I haven't reached that point in the decision-making process.

THE COURT: Okay. And so what you're saying is you're available whenever the Court sets the evidentiary hearings, although you don't think the Court has mandate to hear; is that correct?

MR. AUTRY: What I'm also saying, Your Honor, is with all due respect when the Court set this matter for hearing today, I informed your clerk that I was unavailable. When I didn't receive a response, I had to have my partners cover current client appointments that were set weeks ago, and that's the reason Ms. Bleavins is not here today. She is covering a client appointment that we could not reschedule today. I will be available for the Court—when the Court issues an order.

THE COURT: Let me just say this: Your communication with my clerk is not proper in an adversary case. I set this matter for a hearing. If you wanted to continue it, you would need to file a motion.

MR. AUTRY: Is that also—okay.

THE COURT: Okay.

MR. AUTRY: Understood, Your Honor.

. . .

THE COURT:  It's 2:45. The Court will set the evidentiary hearing on this matter for 2:47 today. The Court will take a standing recess. After the standing recess, the Court will begin the evidentiary hearing in this case to deal with the motions to alter or amend on an evidentiary basis.

When the trial court proceeded a mere two minutes later with the evidentiary hearing, it began with questions regarding Mr. Autry's representation.  Those questions led to a ruling that Mr. Autry and Ms. Bleavins could no longer serve as attorneys in the subject case.  The trial court then denied a motion for a continuance.  The proceedings that day would lead a reasonable person to question the judge's impartiality and showed bias warranting recusal of the judge.   To fully understand the trial court's actions, I believe that it is necessary to include the substance of the exchange which resulted in the exclusion of Mr. Autry and Ms. Bleavins:

THE COURT:  The Court will now proceed with the evidentiary hearings related to the Court's order entered on August the 31st, 2023, wherein the Court had a mandate to hear the motions to alter or amend and wherein the Court set aside certain findings of fact and rulings in the underlying orders.

- 5 -

. . .

Now, first thing that the Court has to do because the Court is going to sua sponte raise whether the attorneys of record from the Williams McDaniel's law firm can proceed because of Rule 3.7 by bringing lawyers as a witness. A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness. There are certain exceptions to that rule. . . . The final one is -- exception is disqualification of a lawyer would work a substantial hardship on the client. I asked Mr. Autry earlier in the status hearing who is your client? In the evidentiary hearing the Court will ask this again. Mr. Autry, who is your client in this case?

MR. AUTRY: Your Honor, with all due respect to the Court, it is wholly improper for the Court to move forward with an evidentiary hearing with two-minutes' notice to all parties that is contrary to the order issued by the Court of Appeals which specifically said this matter is remanded to the trial court for the limited purpose of adjudicating appellant's May 2, 2023, motion to alter or amend and is so ordered. That is the only thing the Court is allowed to do. I will answer the Court's question and in light of the Court's sua sponte bringing the ethical issue with respect to whether I'm able to represent myself and Ms. Bleavins because we perhaps might be a witness, I'm asking the Court to adjourn so that the attorneys can call the bar and seek an opinion before we move forward because of course the Court doesn't want us to violate any ethical rules. So I'm asking the Court to adjourn this wholly improper – it's public bias against myself and my firm, and I stand on the same answer I provided the Court before.

THE COURT: All right. Your objection is duly noted, counsel. And the Court will note that it is preferable governing this rule that either the attorney who is likely to testify raises the issue as early as possible or opposing counsel raises it. However, there is case law to support the fact that a judge should raise the issue sua sponte if appropriate. That case is MacArthur versus Bank of New York, 524 Fed Supp. 1205, 1981. The Court finds that this is a petition to determine the conservatorship of the respondent Susan Davis Malone. The -- Mr. Autry and Ms. Bleavins filed that petition alleging that they were the attorney in facts for Susan Davis Malone. The Court finds that their client is Susan Davis Malone in this matter. Susan Davis Malone appears to have a disability and is -- it appears to be in the – of the protection of this Court. In weighing whether or not attorneys should be removed because they're likely to be a witness, one of the factors the Court should consider is that a party cannot choose in between an attorney's testimony and his representation. There are many attorneys in the bar. There are only a few people who can testify as to the facts. In this case there are allegations in the pleadings, which by the way, the Court attempted to decide this matter as much as possible on the pleadings. The Court is only at this point because of the motions to alter or amend wherein it was complained

that the Court did not hold evidentiary hearings. Now, I'm not aware of how anybody can petition a court in a conservatorship action without testifying, especially if the petitioner is alleging that they are the proper attorney in facts. Also I cannot -- it is important for the Court to determine there are allegations in the pleadings that Ms. Bleavins formed a close relationship with Susan Davis Malone. So close that there's allegations in the pleadings that she was called her daughter; Ms. Bleavins was called the daughter. That means there's allegations in the pleadings that Ms. Bleavins may be a de facto daughter of Susan Davis Malone. I have the other petitioner, Ms. Jackson who is the daughter of Susan Davis Malone. This raises issues of whether or not one daughter exercised undue influence over the respondent in her favor, as opposed to the other daughter. There's allegations as to whether Ms. Jackson may have exercised undue influence, but there's also allegations as to whether Ms. Bleavins as the de facto daughter, if she is one, exercised undue influence. Now, another factor in whether or not to remove attorneys under this rule is whether or not it would work an undue hardship on the client. In this case the client is Susan Davis Malone. This Court is charged with determining what is in her best interests. This Court wants to hear the testimony of Mr. Autry and Ms. Bleavins, especially Ms. Bleavins. Now, in this rule it also says under B a lawyer may -- a lawyer may act as an advocate in a trial in which another lawyer and the lawyer's firm is likely to be called as a witness, unless precluded from doing so. Well, we have one lawyer who is married to another lawyer and then we have another lawyer, Mr. Snyder, who works closely in a small firm with the two other lawyers. The Court cannot find anyway in which this law firm can represent Susan Davis Malone in this petition because it violates Rule 3.7. The Court notes in the first comment to this rule combining the roles of advocate and witness can prejudice the tribunal and opposing parties and can also involve conflict of interest between the lawyer and the client. Now, the petitioners could have elected to remedy this problem. They could have retained outside counsel to represent them. They have not. So the Court finds that it is proper for them not to serve in this case as the attorney for Susan Davis Malone. Other notes include such -- such things as conversely opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. Well, this is difficult for the tribunal also. So the Court finds that Mr. Autry, Ms. Bleavins, and Mr. Snyder are disqualified from serving as the attorneys in advocating for Susan Davis Malone in this matter. Mr. Autry, I will have you step back from the counsel area and move to the gallery so the Court can proceed with the evidentiary hearing.

MR. AUTRY: Your Honor, again I'm going to object because there's no evidence to suggest that Ms. Malone was afforded the opportunity if there was an evidentiary hearing taking place today. Again it is totally improper to

schedule an evidentiary hearing two minutes after the Court announced it, and specifically since the Court speaks through its order in paragraph number 7 of this Court's order entered October 31, 2023 says, the Court sets a status conference, emphasis on status conference, for today at 2:30 p.m. for the purpose of scheduling the evidentiary hearing to carry out the terms of this order. So if I'm not allowed to advocate and the Court wishes to pursue and continue the evidentiary hearing, I would like to be excused because I'm going to take the appropriate action to correct what I believe is a grievous error and obvious bias against our firm.

THE COURT: Counsel, let me have you step back first so that you will know that you are no longer advocating, and then the Court is going to address you one more time.

MR. AUTRY: Again with all due respect, Your Honor, I'm a member of the bar, I'm entitled to step before the bar, but I will comply with the Court's order just like I complied with the Court's order for being here today at 2:30 p.m. when the Court knew I had a conflict.

THE COURT: Okay. Now, the Court is going to proceed with this hearing for many reasons that involved the substantial interests of Susan Davis Malone. Mr. Autry is no longer an attorney in this case because he's been disqualified, and he will not advocate anymore in this case before this Court. Mr. Autry as a witness, if you want to leave, you can leave. You waive being here on your own accord. If you want to stay, you may stay, but you will not address the Court.

MR. AUTRY: For a point of clarification, Your Honor, for the record purposes I presume we are not here on the emergency matter to which the Court referenced before because the Court does not have jurisdiction over that matter, and with respect to my response to the Court, I responded when the Court asked me who I represented and I responded that I represented myself and Ms. Bleavins. The Court just disqualified myself and Ms. Bleavins and my entire firm from representing Susan Davis Malone. So is that—I just want to understand if I'm correct in that assessment.

THE COURT: Let me just make one thing clear. There is a decorum in the court. The Court does not answer questions, okay, and I appreciate the fact that counsels do not ask me questions. The Court especially does not answer questions of witnesses. Deputy, if you need to—

MR. AUTRY: Your Honor, I just asked for a point of clarification. Obviously, the Court does not wish to clarify its ruling. I will depart since I am, by the Court's order, only a witness at this point. Thank you for your time and attention, Your Honor.

The order entered by the trial court on November 15, 2023 which set forth its reasons for disqualifying the Attorneys stated:

> [Attorneys] identified themselves in the emergency conservatorship petition as Attorneys-in-Fact for [Ms. Malone]. She [was] their client [for purposes of the November 6 hearing].
>
> [Ms. Malone] [could] not be made to choose between [Attorneys] as witnesses or as advocates in this evidentiary hearing.
>
> It [did] not work a substantial hardship on Susan Davis Malone for [Attorneys] to be disqualified as lawyers in this case so that they can be witnesses. [1]

The majority concludes that the court's actions memorialized in this order "standing alone" are not a basis for recusal. However, I believe they must be considered in the context of the cumulative actions of the trial court. Additionally, in this order, the trial court references a case which is not a part of the record in these proceedings, as the majority opinion recognizes. The trial judge does not state how he has any knowledge of this case, or what relevance it has to the subject litigation:

> [Attorneys] and the other members of [Williams McDaniel, PLLC] were well aware of the obligation not to serve both as advocate and counsel. Counsel adverse to [Attorneys] raised this issue in *Autry and Bleavins v. Stricklin*, CT-2961-21, pending in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. [Attorneys] were not only aware of but had recently litigated issues raised by Supreme Court Rule 8, Rule of Professional Conduct 3.7. . . .

This would lead a reasonable person to question the judge's impartiality and showed bias warranting recusal of the judge. It at least appears that the judge has been investigating the attorneys and cases that they have in other courts, and then using events of those cases to bolster his orders in the subject case.

The significance of public confidence in our judicial system cannot be overstated. Due to the vitality of this tenant of our legal system, it is imperative to reiterate our Supreme Court's explanation regarding the relationship between our justice system and members of the judiciary:

> Judges must be fair and impartial both in fact and in perception. *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006) ("'[T]he preservation of the public's confidence in judicial neutrality requires not only that the judge be

---

[1] The court found that Mrs. Malone would not incur "substantial hardship" as a result of the exclusion of Mr. Autry and Ms. Bleavins as attorneys. Although the scope of review in this appeal is limited and does not encompass the merits of that ruling, it is worth noting that they were Mrs. Malone's previously-appointed attorneys-in-fact and were denied further time to explore their options regarding representation.

impartial in fact, but also that the judge be perceived to be impartial.'" (quoting *Kinard*, 986 S.W.2d at 228). As this Court declared more than one hundred years ago, "it is of immense importance, not only that justice shall be administered ... but that [the public] shall have no sound reason for supposing that it is not administered." *In re Cameron*, 126 Tenn. 614, 151 S.W. 64, 76 (1912); *see also State v. Lynn*, 924 S.W.2d 892, 898 (Tenn. 1996) ("It is the appearance that often undermines or resurrects faith in the system. To promote public confidence in the fairness of the system and to preserve the system's integrity in the eyes of the litigants and the public, 'justice must satisfy the appearance of justice.'" (quoting *Offutt v. United States*, 348 U.S. 11, 13, 75 S.Ct. 11, 99 L.Ed. 11 (1954)).

*Cook v. State*, 606 S.W.3d 247, 254 (Tenn. 2020). The cumulative effect of the trial judge's actions in this case, whether stemming from actual bias or not, do not satisfy the "appearance of justice" and therefore erode public confidence in a fair and impartial system of justice.

For the foregoing reasons, I would reverse the order of the trial court and find that recusal of the trial judge was required in this matter.

_____
CARMA DENNIS MCGEE, JUDGE