IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 12, 2026

## ROBERT ANTHONY CALEB WISE v. LINDSAY MARIE SNAPP WISE

**Appeal from the Chancery Court for Shelby County**
**No. CH-24-1576      James R. Newsom, Chancellor**

_____

**No. W2026-00203-COA-T10B-CV**
_____

A Tennessee Supreme Court Rule 10B petition for recusal appeal was filed in this Court following the denial of Petitioner's motion for the disqualification of the trial court judge. Discerning no error, we affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed; Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which JEFFREY USMAN, J. and D. KELLY THOMAS, JR., SR. J., joined.

Vickie Hardy Jones, Memphis, Tennessee, for the appellant, Lindsay Marie Snapp.

Anne Elizabeth Johnson and Rachel Cliff, Memphis, Tennessee, for the appellee, Robert Anthony Caleb Wise.

## OPINION

### I.  FACTS AND PROCEDURAL HISTORY

The case underlying this appeal is a divorce action involving a child custody dispute between the parties.  Petitioner, Lindsay Marie Snapp Wise, and Respondent, Robert Anthony Caleb Wise, are the parents of two minor children: a daughter, age seven, and a son, age three.  Divorce proceedings were held on October 1-2, 2025.  On October 3, 2025, the trial court entered a preliminary, expedited oral ruling, designating Petitioner (the mother) as the children's primary residential parent and allowing her to relocate with the children to Huntsville, Alabama for a new job opportunity.  On October 9, 2025, Respondent (the father) filed a proposed permanent parenting plan that stated his intention to also establish a residence in Huntsville and exercise his parenting time with

the children there. According to Petitioner, this proposed plan was never raised or discussed during trial, and it was inconsistent with the court's October 3, 2025 preliminary ruling.

On October 13, 2025, the parties appeared before the court for the conclusion of the court's ruling. During that hearing, counsel for Petitioner moved to strike Respondent's October 9, 2025 proposed permanent parenting plan, arguing that it sought to introduce evidence that had not been presented at trial and had not been subject to cross-examination. The court denied Petitioner's motion to strike, stating in part:

> The Court will, frankly, state that the Court is encouraged by [Respondent's] willingness to establish a residence in Huntsville, because what the Court was concerned about, among other things, was that these children would have to spend enormous amounts of time in car seats going back and forth between Huntsville to Iuka to Shelby County, from Shelby County to Iuka to Huntsville.
>
> And the Court is, frankly, encouraged by [Respondent's] willingness to establish a residence of some sort in Huntsville, Alabama. So with that being said, the Court, exercising its discretion, overrules the objection that has been posed this morning to the proposed parenting plan that was submitted on Friday.

On January 21, 2026, Petitioner filed with the trial court Mother's Emergency Motion for Injunctive Relief. Therein, Petitioner requested that the court immediately suspend Respondent's parenting time due to her fear that the children were not safe in Respondent's care. According to Mother, the children were returned to her care on January 19, 2026, and the parties' son had "significant swelling and discoloration" on his forehead, "which was diagnosed as a closed head injury and hematoma of the face." The following day, Respondent filed a reply stating that the son's injury was due to "rough housing" and that the child had fallen onto the floor.

On January 23, 2026, the matter was heard by the court. At that hearing the court stated, in part, as follows:

> I think we can sort this out in pretty short order. I will disclose to the parties that when my children were young, I think my oldest son was six, and my youngest son was three, my wife worked in the ER at LeBonheur, and so she usually worked night shifts. And so that meant that I was there with the children. And there was one occasion where my older son, who was probably twice the size of my younger son, when I was in the room with him, pushed my younger son off the bed. He hit his head on the night stand. We ended up going to Germantown LeBonheur with stitches and the

- 2 -

whole nine yards.

So I'm not saying that this is one-to-one comparable to that situation, but I know that with younger children things can happen. And I - I didn't get beat up, let's put it that way.

But I do want to look out for the best interest of the children, so let's plan on that.

Petitioner filed a motion for recusal on February 2, 2026, arguing that the trial judge should recuse himself due to the statements made at the January 23, 2026 hearing, along with other claims of inconsistent rulings and showings of bias. The court suspended proceedings pending the outcome of her motion to recuse. The court entered an order on February 5, 2026, denying Petitioner's motion for recusal, and then issued a corrected and revised order the following day, on February 6, 2026. As a preliminary matter, the trial judge determined, subjectively, that he had no subjective bias or prejudice, and that he could proceed with this case fairly and impartially. He then concluded that there was no objective evidence of bias or appearance of bias, and that Petitioner had "failed to carry her burden of demonstrating an alleged lack of impartiality" by the judge. Specifically, the court held that his prior rulings and comments did not demonstrate personal bias or favoritism warranting recusal, and that many of Petitioner's assertions were based on isolated comments and events that took place months prior to the filing of the motion and were waived. Petitioner timely filed this interlocutory appeal pursuant to Rule 10B.[1]

## II. ISSUE PRESENTED

The only issue that we may review in a Rule 10B appeal is whether the trial court erred in denying the appellant's motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). Under Rule 10B, "we may not review the correctness or merits of the trial court's other rulings." *Id.*

---

[1] Respondent has not filed an answer to Petitioner's Rule 10B petition. Under Rule 10B §2.05:

If the appellate court, based upon its review of the petition for recusal appeal and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal. Otherwise, the appellate court shall order that an answer to the petition be filed by the other parties. The court, in its discretion, also may order further briefing by the parties within the time period set by the court, or may remand to the trial court for the taking of proof and making further findings on matters designated by the appellate court.

We have determined that no answer from Respondent is necessary to our review.

## III. STANDARD OF REVIEW

Appellate review of a trial court's ruling on a motion to recuse is *de novo*. Tenn. Sup. Ct. R. 10B § 2.01. Accordingly, we examine the record anew and review the trial court's conclusions with no presumption of correctness. *Elseroad v. Cook*, 553 S.W.3d 460, 463 (Tenn. Ct. App. 2018).

## IV. LAW AND ANALYSIS

We begin our analysis with the well-settled assurance that "'Tennessee litigants are entitled to have cases resolved by fair and impartial judges.'" *Adams v. Dunavant*, 674 S.W.3d 871, 878 (Tenn. 2023) (quoting *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020)). As our supreme court recently has reiterated:

> To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.
>
> To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC 2.11(A).
>
> Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606 S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis [v. Liberty Mut. Ins. Co.*,] 38 S.W.3d [560,] 564–65 [(Tenn. 2001)]).

*Id.*

Additionally, "[a] trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal." *Id*. at 879 (citations omitted). The party seeking recusal of the judge "bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case." *Id*. at 878-79 (citations omitted).

A trial judge's adverse rulings, "'even if erroneous, numerous and continuous, do not, without more, justify disqualification.'" *Id*. at 879 (quoting *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). Further, a judge's adverse rulings in a prior proceeding do not provide a basis for recusal. *Id.* Our supreme court has explained:

> The "adversarial nature of litigation" makes it necessary for trial judges to "assess the credibility of those who testify before them, whether in person or by some other means," and "the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. . . . If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartial[it]y issue for strategic advantage, which the courts frown upon."

*Id*. (quoting *Davis*, 38 S.W.3d at 565).

The person moving for recusal bears the burden of proof to present evidence that would cause a reasonable, disinterested person to reasonably question the judge's impartiality. *Adkins v. Adkins*, No. M2021-00384-COA-T10B-CV, 2021 WL 2882491, at *5 (Tenn. Ct. App. July 9, 2021) (citations omitted). Additionally, as this Court has recently reiterated:

> "If the bias is alleged to stem from events occur[r]ing in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *Boren v. Hill Boren, PC*, 557 S.W.3d 542, 552 (Tenn. Ct. App. 2017) (quoting *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014)).

*Cooper v. Cooper*, 704 S.W.3d 784, 799–800 (Tenn. Ct. App. 2024), *appeal denied* (Nov. 14, 2024).

On appeal, Petitioner asserts that the trial court erred in denying her motion for recusal for the following reasons:

1. The trial court's statements from the bench were such that a reasonable

person could question both the trial court's ability to be fair and impartial and whether the trial court has prejudiced the case;

2. The trial court's conflicting statements and rulings from which a reasonable person could have a loss of confidence in the competency, independence, integrity, and impartiality of the judiciary; and

3. The trial court's statements contained in its February 5, 2026 Order Denying Motion for Recusal Pursuant to Tennessee Supreme Court Rule 10B, which have created further confusion and loss of confidence in the judiciary, notwithstanding the trial court's entry of a Revised Order on February 6, 2026.

We will address each of these arguments in turn.

First, Petitioner takes issue with the trial court's statements during the hearing on January 23, 2026, during which the judge discussed his own personal experience having a child be injured while in his care. According to Petitioner, the trial court's statement that during his own situation "he didn't get beat up" suggests that the judge viewed Petitioner's emergency petition as harsh and unwarranted. Petitioner argues that a reasonable person could infer that the court empathized with Father's position and could not rule on the petition without bias.

The trial court addressed this in its order denying Petitioner's 10B motion, aptly acknowledging that "its comments from the bench may not have been perceived as 'best practice.'" Indeed, they were not. According to the court, it "explicitly stated the anecdote was not a one-to-one comparison and pivoted to the grounds concerning the best interests legal standard." Although we agree with Petitioner and the trial judge that these remarks were not best practice, after review of the record, we do not conclude that they amount to an objective basis to question the court's impartiality. *See generally, Taylor v. Seymore*, No. W2015-01272-COA-T10B-CV, 2015 WL 5011701 (Tenn. Ct. App. Aug. 24, 2015) (holding that a judge's comments about her personal experience, "though perhaps ill-advised . . . does not indicate partiality on the merits of the case when construed in the context of all the facts and circumstances").

Second, Petitioner argues that the court's "inconsistent statements and rulings have caused unnecessary confusion and have not promoted confidence in the judiciary." The bases for this argument appear to be misunderstandings regarding the re-opening of proof in order to finalize a permanent parenting plan, and the timing of the entry of the permanent parenting plan. This issue is without merit for the reasons cited below in Petitioner's closely-related third claim.

Third, Petitioner argues that issues in the court's February 5, 2026 order, which

included mistakes that necessitated the court entering a revised order on February 6, 2026, "raise additional concerns that would cause a reasonable person to question the Trial Court's ability to be fair and impartial." The trial court's order on February 5 included certain statements that either were determined to be mistakes or irrelevant to the case at bar. To that end, the court entered a revised order the following day. The reason for these changes is not entirely clear, but we do not agree with Petitioner that this would reasonably lead to a "loss of confidence in the judiciary."

Petitioner further asserts that there was no reason for the trial court to include in its revised order a discussion of how its adverse rulings do not necessitate recusal – that it is clear that her argument for recusal is premised on the trial court's statements made during the January 23, 2026 hearing. We disagree. Not only does a review of Petitioner's motion for recusal before the trial court reveal her complaints of adverse rulings – such as the denial of Petitioner's motion to strike and the refusal of the court to delay entry of a permanent parenting plan – Petitioner makes similar arguments on appeal. The same is true for Petitioner's assertion that the trial court's determination that some of her claims of bias were delayed and, therefore, waived. *See Harris v. Allen,* No. W2023-01794-COA-T10B-CV, 2024 WL 137453, at *4 (Tenn. Ct. App. Jan. 11, 2024). Again, Petitioner states that the trial court addressed this issue when her motion was only predicated on the court's actions on January 23, 2026. We find this argument to be incongruous with the substance of Petitioner's motion for recusal, particularly in light of Petitioner's "Issue 2" discussed above. We discern no basis for recusal due to the allegations set forth by Petitioner.

## V. CONCLUSION

Discerning no error, we affirm the judgment of the trial court and remand for further proceedings. Costs on appeal are assessed to the Appellant, for which execution may issue if necessary.

/s/ Valerie L. Smith_____
VALERIE L. SMITH, JUDGE